LORNE P. McEWEN, Respondent, v. DANIEL McEWEN, Appellant.

(197 N. W. 862.)

Wills — testator's domicil at death determines jurisdiction for primary probate.

1. A testator's domicil at the time of death determines the jurisdiction for primary original probate of his will.

Wills — law providing that will proved outside this state may be allowed and recorded in county where testator left any estate applies only to foreign will.

2. Section 8672, Comp. Laws 1913, providing that a will duly allowed and proved elsewhere than in North Dakota may be allowed and recorded in any county in which the testator left any estate, applies only in the case of a foreign will.

---

Note.—(1) Domicil of testator at time of death test of probate jurisdiction, see 28 R. C. L. 364.

(3) Effect of probate of a will in another state, see note in 48 L.R.A. 136; 13 A.L.R. 500; 28 R. C. L. 380; 4 R. C. L. Supp. 1822.

(6) Domicil presumed to be place of residence, see 9 R. C. L. 557; 2 R. C. L. Supp. 835.

(7) Intent as to establishment or change of domicil, see 9 R. C. L. 542; 2 R. C. L. Supp. 829.

**Wills — recording of proceeding admitting foreign will to probate prima facie establishes jurisdiction.**

3. The record of a proceeding admitting a will to probate in a court of a foreign country, properly authenticated, prima facie establishes the jurisdiction of such foreign court, that is to say, it is sufficient unless attacked.

**Wills — proof of domicil of origin elsewhere sufficient to overcome prima facie effect of record where probate proceeding jurisdiction dependent on proof of domicil.**

4. Where in a foreign probate proceeding jurisdiction is dependent upon proof of domicil, proof of domicil of origin elsewhere is sufficient to overcome the prima facie effect of the authenticated record.

**Wills — where jurisdiction of foreign probate proceeding dependent on proof of domicil challenged, authenticated record of foreign court has no probative force.**

5. Where in a foreign probate proceeding jurisdiction is dependent upon proof of domicil, and that jurisdiction is challenged by one not a party to such proceeding, the authenticated record of the foreign court has no probative force to establish domicil.

**Domicil — burden on party asserting change in domicil where once established.**

6. Domicil being established in a place, it is presumed to have continued there until the contrary is affirmatively shown, and the burden of proof is upon him who asserts the change.

**Domicil — actual "residence" accompanied by intent to make change in "domicil" fixed home necessary.**

7. Residence and domicil are not synonymous. To effect a change of domicil there must be actual residence in the new place and an accompanying intent to make it the real, true, fixed home. Very satisfactory evidence is required to prove an intention to abandon or change an established domicil, especially where the change is to a foreign land.

**Domicil — weight and value of will recitals to determine domicil of testator and executors depend on circumstances shown.**

8. While recitals in a will as to the residence of the testator and of the executors designated therein are relevant and may be of probative value in determining the domicil of the testator, yet the weight and value of such recitals should and do depend upon the circumstances shown.

Opinion filed March 1, 1924.

Courts, 15 C. J. § 157½ p. 840 n. 83, 84. Domicil, 19 C. J. § 2 p. 395 n. 17, 18; § 9 p. 401 n. 62; § 13 p. 404 n. 84; § 61 p. 430 n. 88; § 66 p. 431 n. 11; § 72 p. 436 n. 37; § 76 p. 439 n. 73. Executors and Administrators, 23 C. J. § 34 p. 1010 n.

48.  Judgments, 34 C. J. § 1650 p. 1165 n. 16.  Wills, 40 Cyc. pp. 1237 n. 87; 1239 n. 96; 1245 n. 56; 1375 n. 7.

Appeal from the District Court of Walsh County, *Lowe,* Special J. Affirmed.

*Gray & Meyers,* for appellant.

"The appeal from the justice to the district court was taken upon questions of law alone pursuant to § 8501, Revised Code, 1905, and the procedure adopted by the trial court affirming the justice was strictly in accordance with said statute.  After being defeated on every point raised by the appeal, the defendant was not thereafter entitled to another trial on the facts in that court.  If he desired a new trial on the facts in the district court, he should have appealed under the provisions of the other sections relating to appeals generally."  Hanson v. Gronley, 17 N. D. 191.

"Defendant saw fit to appeal to the district court *solely on questions of law.*  By his appeal, he invoked the jurisdiction of the district court *merely on questions of law* and having been defeated in this he was not entitled to a trial on the merits."  Whitmore v. Behm, 22 N. D. 280.

"The appeal from the justice of the peace to the district court being on *questions of law alone,* there was no question of fact for the court to consider, nor of the effect of the evidence, except to determine whether it was such that from it, the justice might have found facts that would justify the judgment."  Croonquist v. Flatner, 43 N. W. 9.

"Declarations of residence in wills have always been received in evidence.  The purpose of stating the residence of a testator in a will, or of a party to a deed or other written instrument, is in part at least to identify the party by his residence from all others who may chance to have the same name.  The statement of residence is therefore material to the act.  It is a part of it.  And so considered, we think, the act is relevant and probative."  Holyoke v. Holyoke, 110 Me. 469, 87 Atl. 40.

"Declaration made in a deed or will on the subject of domicil at a time when there is no dispute about the matter is evidence of the highest character and establishes a domicil unless overcome by positive proof to the contrary."  Miller v. Miller, 34 Ohio C. C. 43.

"Following out the theory of an identity of person, the law fixes

*the domicil of the wife by that of her husband* and denies to her during cohabitation the power of acquiring a domicil of her own separate and apart from him; and *she cannot during such period of cohabitation effect a separate domicil by her intention* that his domicil shall not be hers, *even though assented to by him."* 19 C. J. p. 414, § 33; 4 Enc. Ev. p. 852, § E.

*"The place where a person lives is taken to be his domicil until facts adduced establish the contrary* and a domicil when acquired is presumed to continue until it is shown to have been changed *and although the wife may be residing in another place, the domicil of the husband is her domicil.* Even where a wife is living apart from her husband without sufficient cause his domicil is in law her domicil." Anderson v. Watts, 198 U. S. 694, 34 L. ed. 1078, 11 Sup. Ct. Rep. 449.

"The place of residence where a person actually lives is, prima facie, presumed to be his legal domicil and the rule applies not only in interstate habitation but also where a citizen removes to a foreign country." 19 C. J. p. 431, § 66; 4 Enc. Ev. p. 848, ¶ E.

"The place where a person lives is held to be his domicil until the contrary appears and this is made to appear when it is shown by positive or presumptive proof that at the time of the apparent change of domicil he had no intention of remaining for an unlimited time at the place to which he removed." Dow v. Cult, 31 Cal. 629.

When the will was proved only in "common form," the court might at any time within a limited period after probate of its own motion or at the instance of the next of kin or other persons interested require the executor to prove the will in "solemn form." 16 Enc. Pl. & Pr. 993; 28 R. C. L. § 369.

When the governing statute or law does not require notice of the application to probate a will and none is given, the judgment or order approving the will is valid provided ample remedy by appeal or otherwise is given. 16 Enc. Pl. & Pr. p. 1003, ¶ 5; Crippen v. Dexter, 13 Gray, 330; Frazer v. Wayne Circuit Judge, 39 Mich. 198; Otto v. Doty (Iowa) 15 N. W. 578; Martin v. Martin (Neb.) 97 N. W. 289; Bronbroussard v. Hebert (La.) 89 So. 14; Pat v. Holly (Ill.) 130 N. E. 793; Linthicum v. Linthicum (Md.) 99 Atl. 977; Ropar v. Ropar (W. Va.) 88 S. E. 834; Horton v. Dickie, 217 N. Y. 363, 111 N. E. 1066, Ann. Cas. 1918A, 611.

It is the rule well supported by authority that *no formal judicial order or decree* admitting a will to probate is necessary providing a *judicial approval thereof can be gathered from the record as whole.* 16 Enc. Pl. & Pr. p. 1045, § 22; 40 Cyc. p. 1843, ¶ L., Re Warfield, 22 Cal. 51; Wilt v. Cutler, 38 Mich. 189; Holliday v. Code, 19 Pa. 490; Martin v. Martin (Neb.) 97 N. W. 289; Otta v. Doty (Iowa) 15 N. W. 578; Keister v. Keister (Ill.) 52 N. E. 946; Chandler v. Richardson (Kan.) 69 Pac. 168; Marshall v. Fisher, 46 N. C. (1 Jones, L.) 111.

"While the record made is meager in the extreme yet sufficient appears therefrom to show the will was not withheld from probate, but was, upon application made to the probate judge, the proper custodian under the law, shortly after the decease of the testator, produced, opened, and read in open court in the presence of one of the attesting witnesses, the devisees of the property and another; that the widow made her election to take under the will and a record of its admission to probate was entered upon the will. From these entries, while the same should have been made in a more formal way upon the record, of the court, yet it sufficiently appears that the court considered and determined the question of admitting the will to probate, and did admit the will to probate. The order so made is as binding and conclusive as though entered in a more formal manner. In our opinion, the real estate in controversy passed under the will, and did not descend to the heirs of the testator." Allen v. Allen, 28 Kan. 18.

*H. C. DePuy,* for respondent.

"Courts seems to be unanimous in holding that statutes providing for the allowance or recording of wills admitted to probate in another jurisdiction, upon the production of a duly authenticated copy, do not apply where the testator's domicil at the time of his death, was within the state. Two reasons are usually given for such decision; one being that these statutes are to be construed with reference to others on the same subject, requiring probate at the place of decedent's domicil; and the other, that such statutes are intended to apply only where the court of the other state or country has jurisdiction, which is not the case with reference to realty situated, or personalty belonging to one having a domicil, without the state where the will is offered for probate." Re Clark (Cal.) 1 L.R.A.(N.S.) 996.

"A court in all proceedings in rem determines the right of the party to the relief prayed for, but enters judgment only against the property within its jurisdiction, the judgment so rendered not serving as a basis for any proceeding in a foreign jurisdiction, and not being binding upon anything except the property and rights in the property against which it operates." Re Longshore, 176 N. W. 902 (Syl.) See also cases cited in note 1 L.R.A.(N.S.) 996.

"One is his legal residence as distinguished from his temporary place of abode; or to use the language of the charge, one is his home, as distinguished from the place or places to which business or pleasure may temporarily call him." 19 C. J. 395.

"Declarations made by a party whose domicil is in dispute, whether oral, in a deed, will, letter or other document, are to be *considered in connection* with the facts of the case." 19 C. J. 438.

"But in a will 'Prepared by an attorney where he inserts the place of residence as in part a matter of form such statement is not controlling.'" 19 C. J. 439 note.

"The term 'residence' in common parlance signifies a sojourning or present stay." 19 C. J. 439 note.

"Declarations are of no avail when they are conflicting, or indefinite, or when evidently made for the purpose of *creating evidence* in favor of the declarant." 19 C. J. 440 text.

"A domicil when once obtained or acquired is *presumed* to continue." 19 C. J. 431.

"Mere *residence* elsewhere will *not rebut* the presumption as to continuance, unless it is *inconsistent* with an intent to return to the original domicil." 19 C. J. 433.

"Where facts are conflicting the presumption is *strongly* in favor of an *original* as against an *acquired* domicil, and a *domestic* rather than a *foreign* domicil." 19 C. J. 433.

NUESSLE, J. In November, 1908, Mary C. Hunter made a will hereinafter referred to as the North Dakota will, devising a quarter section of land in Walsh county, North Dakota to her nephew, Lorne P. McEwen, the respondent herein. This devise was subject to a life estate in favor of her husband, Alexander Hunter. Subsequently and in 1918 Mrs. Hunter with her husband went to Canada, where she died

in October, 1919. The North Dakota will recited that Mrs. Hunter was a resident of Walsh county, North Dakota, and a resident of North Dakota was nominated as executor therein. Mrs. Hunter was able to and did affix her signature to this will. Mrs. Hunter died on October 14th, 1919.

On March 25th, 1920, Lorne P. McEwen began proceedings in the county court of Walsh county for the probate of the North Dakota will under which he was the devisee. In his petition for probate, which was verified by him, he recited that Mary C. Hunter died in Ontario, Canada, not being a resident of North Dakota at the time of her death, and further recited that her sole heir at law was her husband, Alexander Hunter, whose residence and postoffice address was Perth, Lanark county, Ontario. Service of notice of these proceedings in the Walsh county court was duly had and in due time the appellant, Daniel Mc-Ewen, appeared to resist the probate of the North Dakota will, and filed an answer and cross-petition with an authenticated copy of an alleged will of Mrs. Hunter made in Canada on October 10th, 1919, and the record of the probate thereof in Canada attached, praying that the probate of the North Dakota will be denied and that the Canadian will be admitted to ancillary probate by the court. In his answer and cross petition the appellant admitted the death of Mary C. Hunter, then being a resident of Ontario, on October 14th, 1919; that she left real property in Walsh county, North Dakota, and that her sole heir at the time of her decease was her husband, Alexander Hunter, whose address was Perth, Ontario, but denied that the North Dakota will was her last will. He alleged that Alexander Hunter died in Canada on March 21, 1920 without issue; that he left a will whereby he devised the Walsh county land and wherein he nominated the appellant, Daniel McEwen, a resident of Lanark county, Ontario, as an executor; that the other executor nominated by Alexander Hunter was a resident of Walsh county, North Dakota; that on the 10th day of October, 1919, Mrs. Hunter made, published and declared a last will and testament in conformity with the laws of her domicil, to wit Ontario, where she had continuously resided for a number of years prior thereto; that in such will she nominated her brother, Daniel McEwen, the appellant, and one Martin, both of Lanark county, Ontario, as her executors; that thereafter and on the 20th day of March, 1920, such will was duly admitted

to probate by the surrogate court of the county of Lanark, province of Ontario, as shown by the authenticated copy of such will and the probate thereof attached to the cross-petition. To this cross-petition the respondent filed an answer and objection. He realleged the matters and things set out in his petition as to the North Dakota will; alleged that while Mary C. Hunter died in Canada that she was a citizen of North Dakota and was not domiciled in Ontario; denied that the Canadian will was the will of Mrs. Hunter, and that it was ever duly proved in Canada or elsewhere; admitted that Alexander Hunter was dead; denied that the probate of the will was effective to establish the will in North Dakota insofar as to affect real property in North Dakota, or to grant ancillary probate thereof in North Dakota. He alleged that at the time of the making of such will, Mrs. Hunter was not of sound mind or memory or competent to make a will; that such will was not freely and voluntarily made, and that it was procured by fraud, duress and undue influence, and that such will was not duly or sufficiently proved in the surrogate court of Lanark county, Ontario.

Thereafter a hearing was had on the issues as made by these pleadings. At such hearing the proponent of the North Dakota will adduced evidence tending to show that at the time such will was made Mary C. Hunter was seventy-five years of age; that she was then of sound mind; that she resided on the land devised in Walsh county; that she had been a resident there with her husband for many years; that she had perfected title to a government homestead in Walsh county; that such will was duly executed and published and given by Mrs. Hunter to her brother, Peter McEwen, the father of the respondent herein, for safe keeping; that Mrs. Hunter continued to reside in Walsh county for some ten years thereafter; that in the fall of 1918 when she was eighty-five years of age Mrs. Hunter and her husband, Alexander Hunter, went to Canada, the old McEwen home; that she was then infirm in mind and in body; that she went for temporary purposes; that when she departed for Canada, she left her household belongings in her home and stated that she wanted them when she returned; that the Hunters established no home in Canada; that Mrs. Hunter was too feeble to maintain a home there; that shortly before her death she was feeble-minded and was subject to hallucinations. The record as made by the respondent is wholly silent as to Alexander Hunter, ex-

cepting only that it appears therefrom that he accompanied Mrs. Hunter to Canada. The respondent offered to prove that Mrs. Hunter was not at the time of the making of the Canadian will of sound mind or memory or competent to make a will; that said writing was not freely given or made or executed by her as her last will and testament; that the subscription and publication thereof were secured by fraud and undue influence; and that she was so impaired in mind and body that she was incapable of exercising her own will, and that she was induced against her will and judgment and contrary to her wishes to subscribe to said purported will. To this offer the appellant objected on the ground that the decree of the surrogate court of the county of Lanark, province of Ontario, admitting the will to probate as shown by the authenticated proceedings of that court offered in evidence, under the statute as to the probate of foreign wills, foreclosed any question as to the matters offered to be established. This objection was sustained by the court. On the other hand, the court received in evidence the answer and cross-petition of the appellant together with the authenticated copy of the proceedings of the Canadian court over the objection of the respondent that they were inadmissible on all the grounds set out in his answer and objection to the cross-petition. The probate by the surrogate court of Ontario, as shown by the authenticated record, was in short or common form, i. e. upon proceedings to which the executors alone were parties. See 28 R. C. L. p. 367. The Canadian will complied with all the requirements of the laws of Ontario and the rules of the surrogate court as to form, signature and attestation.

It was further stipulated that the respondent, Lorne P. McEwen, was a resident and citizen of the county of Walsh, North Dakota, and was not a party to the proceedings in the surrogate court of the county of Lanark, Ontario, or in any manner cited to appear therein, and had no knowledge of the pendency of said proceedings until after the order admitting the will to probate had been entered.

On the record as made, the court thereupon made findings, among others, a finding that Mary C. Hunter was at the time of the execution of the Canadian will and at the time of her death a resident of Lanark county, Ontario, Canada, and entered an order denying probate of the North Dakota will and admitting the Canadian will to ancillary probate. Thereafter the respondent perfected an appeal to the district

court of Walsh county on questions of law alone. The district court, after a consideration of the record as thus certified to him by the county court, overruled and reversed the order of the county court admitting the Canadian will to probate, and ordered that the county court enter a new decree admitting the North Dakota will to probate, with leave, however, should the appellant so desire, to contest the same upon any of the statutory grounds, or to present the Canadian will for original probate in the county court of Walsh county. From this order the appellant, Daniel McEwen, appealed to this court.

We have then this situation: Two wills of different date by the same testatrix devising the same North Dakota real property. The earlier will made in North Dakota in accordance with North Dakota law by the testatrix when domiciled in North Dakota. The latter made in Canada in accordance with Canadian law and originally probated in Canada in short or common form. The earlier will propounded for original probate in North Dakota. Whereupon the proponent of the later will resists such probate, presents the authenticated record of the Canadian will and probate thereof, and demands that it be admitted to ancillary probate in North Dakota. The proponent of the North Dakota will, challenging the fact of Canadian domicil and resisting such ancillary probate, insists that the Canadian will, if admitted at all, be admitted for original probate in North Dakota to the end that he may contest the validity thereof in North Dakota. Thus the sole question is as to whether the probate of the Canadian will in North Dakota if the same be admitted to probate therein shall be original or ancillary.

We think there can be no question but that, generally, a testator's domicil at the time of death determines the jurisdiction for primary original probate of his will. That is, the proper court of his last domicil has exclusive original authority over the probate of the testator's last will. See Schouler, Wills, § 1057; 11 R. C. L. p. 69 and cases cited at note 16; 5 R. C. L. p. 109; 28 R. C. L. p. 366; 23 C. J. p. 1010; 40 Cyc. p. 1245. Consistent with this rule our statute, § 8672, Comp. Laws, 1913, provides:

"Every will duly proved and allowed in any of the territories, or in any other of the United States or the District of Columbia, or in any foreign country or state, may be allowed and recorded in the county

court of any county in which the testator shall have left any estate, or any estate for which claim is made. When a copy of the will and the probate thereof, duly authenticated, shall be produced by the executor, or by any other person interested in the will, with a petition for letters, the same must be filed, and the court or judge must appoint a time for the hearing; notice whereof must be given as provided for an original petition for the probate of a will. If, on the hearing, it appears upon the face of the record that the will has been proved, allowed and admitted to probate in any of the territories, or any other of the states of the United States, the District of Columbia, or in any foreign country or state, and that it was executed according to the law of the place in which the same was made, or in which the testator was at the time domiciled, or in conformity with the laws of this state, it must be admitted to probate, be certified in like manner according to the facts, and recorded, and have the same force and effect as a will first admitted to probate in this state, and letters testamentary or of administration with the will annexed issued thereon."

This section, in whole or in part, is embodied in the statutes of nearly all of the states, see 28 R. C. L. p. 366, note 14. It comprises §§ 1, 2 and 3 of the proposed Uniform Probate of Foreign Wills Act. In construing this statute, in connection with other statutory provisions relating to foreign and domestic wills, the courts have held without dissent that its provisions apply only in the case of foreign wills and do not apply where the testator's domicil at the time of death was within the state. See 40 Cyc. p. 1239; Re Clark, 148 Cal. 108, 82 Pac. 760, 7 Ann. Cas. 306, 1 L.R.A.(N.S.) 996, 113 Am. St. Rep. 197 and notes. We believe such is the proper construction and should be adopted in this state. As is said in Re Clark, supra:

"But, nevertheless and always, when a foreign will is so offered (under § 8672, N. D. Comp. Laws, 1913, supra) for probate in this state, two questions are open as new and original questions for the determination of our own probate court: First, the sufficiency of the proofs of foreign probate; and, second, the question of the residence of the deceased. For if, upon the question of residence, it shall be determined that the deceased was in truth a resident of this state, it follows of necessity that the proper state court has exclusive, original primary jurisdiction to admit the will to probate, and will not admit

it as a foreign will for ancillary proceedings. It does not, of course, follow that because the probate court under such circumstances will not admit it as a foreign will that it will refuse it probate altogether. It will grant it probate, the facts warranting, in proceedings under § 1294 (§ 8526, N. D. Comp. Laws, 1913) for original probate."

And while in the paragraph above quoted the court used the term "residence," it was used in the broader sense of legal residence or domicil.

In the instant case the Canadian will of Mary C. Hunter was admitted to probate in Ontario prior to the initiation of any proceeding for probate elsewhere. It therefore follows, if Mrs. Hunter was at the time of her death domiciled in Ontario and the will was duly proved and allowed in probate there, that it must be admitted to ancillary probate in Walsh county; but on the other hand, if she was at the time of her death domiciled in Walsh county, then the statute does not apply and the Canadian will, if admitted to probate, must be admitted to original probate therein.

In the instant case the county court passed upon the issue of domicil raised on the pleadings, and in effect held that the domicil of the testatrix was in Ontario. There was no express finding as to domicil. The finding was that her residence was in Ontario. In this connection it must be remembered that the appeal to the district court was on questions of law alone. It is conceded on both sides that the appeal, being thus limited, the determination of the county court on the question of domicil can be disturbed only if the same is clearly contrary to the preponderance of the evidence in the record touching the matter.

The record is very short. The substance of the testimony introduced has been heretofore stated. No testimony was offered on the part of the appellant other than his petition and the authenticated record of the Canadian court. These were objected to by the respondent on all the grounds raised in his answer and objection to the cross-petition. It is the contention of the appellant that the record of the Canadian court is properly authenticated; that prima facie it establishes the jurisdiction of the Canadian court. We think that this contention is correct, and jurisdiction is presumed unless attacked. Holyoke v. Holyoke, 110 Me. 469, 87 Atl. 40. But jurisdiction is dependent upon proof of domicil. And the question of domicil being challenged, the

50 N. D.—43.

moment that any evidence to the contrary is introduced, the prima facie effect of the authenticated record is overcome. Proof of domicil of origin elsewhere does this. Ibid. The proceeding in Canada was in rem. No judgment in personam was rendered. The authenticated record has no probative force to establish domicil. See Overby v. Gordon, 177 U. S. 214, 44 L. ed. 741, 20 Sup. Ct. Rep. 603; Re Horton, 217 N. Y. 363, 111 N. E. 1066, Ann. Cas. 1918A, 611. Neither is there any competent evidence in the record as to the making of the Canadian will or otherwise in support of the appellant's position. Such position is not established unless by the admissions of the respondent.

The respondent in his petition, in the first instance, recited that Mary C. Hunter died in Canada, not being a resident of the state of North Dakota, and that the residence and postoffice address of Alexander Hunter, her sole heir, was Perth, Ontario, Dominion of Canada. In view of the respondent's answer and contention throughout the proceeding, we believe that this statement in the original petition cannot be considered as an admission as to the residence of the testatrix, and is entitled to no weight in determining the matter of her domicil. It appears from the evidence that the testatrix had taken and perfected title to a government homestead in Walsh county many years ago; that she and her husband had a home and resided in Walsh county where they lived for many years and up to the time they left for Canada in the fall of 1918; that testatrix departed thence for a visit, accompanied by her husband; that the testatrix left her home and household articles therein, expressing an intention to return; that she remained away until her death something over a year later; that she never established a home in Canada; that she was weak in body and unable to establish and maintain a home; that shortly before her death she was feeble in mind and subject to hallucinations. It does not appear by admission of the respondent, excepting inferentially, as to where Alexander Hunter, the husband of the testatrix, died. But the inference is that he died in Canada. Nowhere does it appear as to what his intention was as to the matter of domicil. So far as the record shows, the domicil of origin of both the testatrix and Alexander Hunter was North Dakota, and this being established, it is presumed to have continued there until the contrary is affirmatively shown. Comp. Laws 1913, ¶ 42, § 7936; Pickering v. Winch, 48 Or. 500, 87 Pac. 763, 9 L.R.A.(N.S.) 1159

and cases cited; Gardner v. Board of Education, 5 Dak. 259, 38 N. W. 433; Holyoke v. Holyoke, 110 Me. 469, 87 Atl. 40; Miller v. Miller, 34 Ohio C. C. 43; 19 C. J. 431 and note. And the burden of proof is on him who asserts the change. Gardner v. Board of Education, 5 Dak. 259, 38 N. W. 433; Miller v. Miller, 34 Ohio C. C. 43; Holyoke v. Holyoke, 110 Me. 469, 87 Atl. 40; Pickering v. Winch, 48 Or. 500, 87 Pac. 763, 9 L.R.A.(N.S.) 1159 and cases cited.

Appellant asserts that Alexander Hunter's domicil was in Ontario at the time of Mrs. Hunter's death; that this presumptively follows from the fact that his residence was there at that time, and that since husband and wife may not have separate domicils, it also follows that Mrs. Hunter's domicil was in Ontario. But the appellant is the party asserting the change from North Dakota to Canada. The burden is on him, yet he offers no proof but relies on inference and presumption alone. Has he met the requirement and sustained the burden? There is no evidence in the record touching the matter of the residence or domicil of Alexander Hunter, excepting the testimony of the witnesses called on behalf of the respondent and which tends to establish his domicil in North Dakota at the time of his departure for Canada in 1918. If it be found that the residence of Alexander Hunter was in Canada at the time of Mrs. Hunter's demise, such finding must be based upon the recital of such residence in respondent's original petition, the allegation of his residence in the appellant's cross-petition, the admission of his death in the respondent's answer and respondent's failure therein to expressly deny the allegation of residence in the cross-petition. Though these, taken and considered together, be held sufficient to sustain the contention as to Alexander Hunter's residence in Canada, yet we do not think them sufficient to warrant the inference that it was his intention to abandon his domicil in North Dakota. Very satisfactory evidence is required to prove an intention to abandon or change an established domicil, especially where the change is to a foreign land. Wharton's Priv. International Law, § 55; Whicker v. Hume, 7 H. L. Cas. 124 at p. 159, 11 Eng. Reprint, 50, 64, 9 Eng. Rul. Cas. 689. While domicil and residence are frequently used synonymously (See 9 R. C. L. p. 540; 19 C. J. 395), yet there is a clear distinction in law between them and they are not when used accurately, convertible terms. Gardner v. Board of Education, supra; Pickering

v. Winch, supra; 19 C. J. 395 and notes. To effect a change of domicil there must be actual residence in the new place and an accompanying intent to make it the real, true, fixed home. Gardner v. Board of Education, and Pickering v. Winch, supra; Holyoke v. Holyoke, 110 Me. 469, 87 Atl. 40; Miller v. Miller, 34 Ohio C. C. 43; Price v. Price, 156 Pa. 617, 27 Atl. 291; Merrill v. Morrissett, 76 Ala. 433.

Appellant urges that the circumstances that in the Canadian will Mrs. Hunter was described as a resident of Canada, and that the executors nominated therein were residents of Canada are to be considered in determining the question of domicil. The original will is not in evidence. Neither is there any proof thereof in the record other than the authenticated copy of the surrogate court of Ontario. From this it appears that the will was signed by mark. True, the rule is that recitals in a will are relevant and may be of probative value in establishing the domicil of the testator. Likewise, the place of domicil of the executors designated. Holyoke v. Holyoke, 110 Me. 469, 87 Atl. 40; Miller v. Miller, 34 Ohio C. C. 43; Merrill v. Morrissett, supra. But the weight and value of such recitals and designations should, and we believe do, depend upon the circumstances. Here a very old woman, eighty-six years of age, by reason of infirmity signs a purported will by mark. She is subject to hallucinations and feeble of mind. Certainly she did not write the will. Neither can we infer that she dictated its provisions. The recitals as to residence are largely matters of form. The expressions of the scrivener rather than of the testatrix. We think that they are to be given no weight, under the circumstances shown, in determining her domicil.

We are of the opinion that on the whole record as made, it clearly appears that Mrs. Hunter at the time of her death was domiciled in the state of North Dakota, and that as a matter of law, the inferential finding of the county court to the contrary is not sustainable. The question of domicil being thus determined, the appeal must fail. It is not necessary to consider any further questions that have been raised.

The order and judgment of the district court will be affirmed.

BRONSON, Ch. J., and CHRISTIANSON, JOHNSON, and BIRDZELL, JJ., concur.