PITTMAN, Justice,
for the Court:
This case involves the question of the requirements for execution of a holographic will. The chancellor followed what has been settled law in this jurisdiction for some time and dismissed the proposed holographic will as invalid. We affirm.
*732 I.
Mildred Rowell died on August 6, 1989. She was sixty-five years old, a widow, and possessed a tenth grade education. She was survived by seven children: Pauline Fulmer; Evelyn Hollingsworth; Dale Bunch; Linda Soudélier; Kathey Amyotte; George W. Rowell; and Paul C. Rowell. On December 21, 1989, Evelyn Hollings-worth filed a Petition for Letters of Administration, alleging that her mother had left no will, and asking that she be named administratrix of her mother’s estate. Hollingsworth was subsequently named ad-ministratrix of her mother’s estate. Holl-ingsworth also gave notice to creditors.
On February 6, 1990, Kathey Amyotte filed a Petition for Probate of Will and for Letters Testamentary. She alleged that her mother had left the following holographic will, handwritten on two sides of one sheet of paper:
I Mildred Rowell of Route 2 Box 210 Vossburg Miss 39366 of Clark County Mississippi, being of sound and disposing mind and memory, do hereby make ordain, publish and declare this instrument to be my last will and testament, hereby expressly revoking any and all wills codicils or other instruments of a testamentary nature heretofore made by me in manner and form following.
I
It is my will and I so devise and bequeath that my one hundred acres or ninety eight acres be equal Divided between my two Boys George W Rowell and Paul Rowell, and the minerals wright Divided among the Boys and girls George, Paul, Pauline, Evelyn, Linda, Dale + Kathey Rowell.
II
It is my will My house where I live goes to my Grandson Cassidy Clay Porter and everything inside it with 2 acres of land with it.
III
It is my will that I have five acres left in Chester Rowell est. I leave three (3) to George Rowell and 2 acres to Evelyn Hollingsworth, over
I hereunto set my hand and affixed my seal having first written my in the bottom of the preceding page hereof for the purpose of identification, in the presence of the two subscribing witnesses, on this the 28 day of June in the year of our lord, one thousand nine hundred seventy-seven.
Kathey asked that she be named executrix of her mother’s estate, as Amyotte’s son, Cassidy Clay Porter[1], was the primary beneficiary of the alleged will. Amyotte also alleged that Evelyn Hollingsworth knew of the holographic will’s existence at the time she was made administratrix of the estate, and that the letters of administration should, as a result, be set aside.
Evelyn Hollingsworth, Pauline Fulmer, Dale Bunch, and Linda Soudelier filed an objection to the probate of the holographic will. They alleged that the will was not written by Mildred Rowell, nor had it been subscribed as required by law.
A hearing was held on June 7, 1990. The plaintiffs presented testimony from George Rowell, Paul Rowell, Cassidy Porter and Kathey Amyotte. Paul Rowell testified that his mother had given him a blue plastic folder approximately two years before her death and had told him to keep it for her. A few days after she died, Paul Ro-well examined the folder and found the holographic will. It appears that the terms of the will were fairly accurate as to Mildred Rowell’s possessions. The will did not dispose of all of Mildred Rowell’s possessions. She had approximately $100.00 in a checking account and two cars of questionable condition that were not mentioned. George Rowell, Paul Rowell and Kathey Amyotte all testified that they were familiar with their mother’s handwriting and that the will had been written- by her. It seems that Mildred Rowell had wanted Cassidy Porter to have her property be *733 cause she had practically raised him for the first three years of his life. George Rowell and Cassidy Porter testified that Mildred had told them that she wanted Cassidy to have her house and the property around it. According to George and Paul Rowell, their mother left the one hundred acres in question to them because she wanted the property to remain in the Rowell family. There was some confusion over the date of the will, as Cassidy Porter, one of the will’s principal beneficiaries, had not yet been born in 1977.
After the plaintiffs rested, Evelyn Holl-ingsworth and her sisters moved the court to dismiss the claim. The chancery court found that the document in question was written by Mildred Rowell. Relying on Miss.Code Ann. § 91-5-1 (Supp.1989), and Wilson v. Polite, 218 So.2d 843 (Miss.1969), and noting that the will had not been signed at the end by Mildred Rowell, the court found that the will had not been subscribed as required by statute and was therefore invalid.
II.
The objectors moved for dismissal of Ka-they Amyotte’s claim under Miss.R.Civ.P. 41(b). When considering a motion under 41(b), the trial judge considers the plaintiffs evidence fairly, instead of in the light most favorable to the plaintiff. If after consideration in this manner the trial court finds that the evidence is insufficient to meet the requisite burden of proof or to prove one or more key elements of the claim, then the trial court should render judgment in favor of the defendant. If there is doubt, then the motion should be denied. Smith v. Smith, 574 So.2d 644 (Miss.1990). As for findings of fact made by a judge sitting without a jury, this Court employs the substantial credible evidence/manifest error rule. Croenne v. Irby, 492 So.2d 1291 (Miss.1986).
The requirements for execution of wills is controlled by Miss.Code Ann. § 91-5-1 (Supp.1989), which provides:
Who may execute.
Every person eighteen (18) years of age or older, being of sound and disposing mind, shall have power, by last will and testament, or codicil in writing, to devise all the estate, right, title and interest in possession, reversion, or remainder, which he or she hath, or at the time of his or her death shall have, of, in, or to lands, tenements, hereditaments, or annuities, or rents charged upon or issuing out of them, or goods and chattels, and personal estate of any description whatever, provided such last will and testament, or codicil, be signed by the testator or testatrix, or by some other person in his or her presence and by his or her express direction. Moreover, if not wholly written and subscribed by himself or herself, it shall be attested by two (2) or more credible witnesses in the presence of the testator or testatrix.
The trial court found the document in question was in the handwriting of Mildred Rowell, and we would uphold such a finding under the applicable standard of review. However, the trial court further found that the will had not been “subscribed” as required by § 91-5-1 and applicable case law.
Wilson v. Polite, 218 So.2d 843 (Miss.1969) is our definitive case on this matter. The document in question in Wilson was the holographic will of one Clara Thompson. Clara Thompson had placed her name, within the text of a sentence, five lines from the end of the will: “I Clara thompson do hear by & Swear that i am in Very good health & Sound Mind at this righting.” Wilson, 218 So.2d at 846. The chancery court declared the proposed will invalid. This Court affirmed, and began by discussing certain basic facts regarding wills:
No person has an inherent or constitutional right to make a will disposing of his property. Such is a privilege extended to the citizens by the State. 94 C.J.S. Wills § 3, p. 680 (1956); Mississippi College v. May, 241 Miss. 359, 128 So.2d 557 (1961); Woodville v. Pizzati, 119 Miss. 442, 81 So. 127 (1919).
It is a requisite to a valid will that it be executed as prescribed by statute. 94 C.J.S. Wills § 127(1), p. 898 (1956).
*734 No matter how earnestly one may desire and intend to make a will, a paper, although fully intended by the writer to be a will, is ineffective and invalid unless its execution meets statutory requirements.
The purpose of statutes prescribing formalities for the execution of wills is not for the purpose of restricting the power of testator to dispose of his property, but it is to guard against mistakes, impositions, undue influences, fraud, deception, etc., which would divert the property of the testator from those intended by him or her to inherit same. The formalities are for the testator’s protection also, as well as the beneficiaries’.
[[Image here]]
There are two methods of executing wills, and the method exercised determines the type of will made. One of the methods is by a written instrument “signed” by the testator and attested by two or more credible witnesses in the presence of the testator or testatrix. The statute provides that in such a will it shall be “signed” by the testator or by some person in his presence by his or her express direction, and if it is not wholly written and “subscribed” by the testator, it shall be attested by two or more credible witnesses in the presence of the testator. This Court has determined that when the statute uses the word “subscribed” in connection with a will not attested by witnesses, the word “subscribed” means signing at the end or beneath the will.
Wilson, 218 So.2d at 849. As to Clara Thompson’s will, the Court found:
What the proponents propose is that this Court declare to be the signature of the testatrix her name which appears in the fifth line above the end of the instrument where it is said: “I Clara thompson do hear by & Swear that i am in Very good health & Sound Mind at this righting Please do as i ask you to do & pay your selves of Mr. Sterling.” As it was in the King case, the name so appearing was a part of a sentence. It was not at the end of the will. Of course, we are conscious of the fact that there are cases which say provisions, particularly dispos-itive provisions, which are written below and after a signature may be ignored. But in all the cases that we have found so holding, there was no question about whether a signature was affixed to the instrument. In nearly every case a signature was where it could be expected to be. Except for a postscript or codicil beneath the name, the signature was found subscribed beneath the will. In those cases there was no question as to whether the instrument was signed or whether a signature could be found; the question was, the signature being there, was all that was beneath it, and unsigned, null and void? We have yet to run across a case where a court in a holographic will has eliminated words preceding and succeeding the name of the purported testator in order to establish that name as a signature. What the proponents ask us to do here is to strike out the words “I * * * do hear by and Swear that i am in Very good health & Sound Mind at this righting. Please do as i ask you to do & pay your selves of Mr. Sterling,” thereby leaving the name of the testatrix, “Clara Thompson,” standing alone to become her subscription to a holographic will. In other words, the proponents are asking us to do what the alleged testatrix did not do herself, that is, make a will.
Wilson, 218 So.2d at 853-54. A strong dissent accused the majority of being hy-pertechnical and rejecting the unquestionable intent of Mrs. Thompson. The interpretation of subscription given in Wilson was subsequently endorsed in In re Estate of Giles, 228 So.2d 594 (Miss.1969).
In Mildred Rowell’s purported will, a one-page document with writing on the front and back, her name appears in the first line of the will. It does not appear again. Thus the will in question does not comport with the requirements of § 91-5-1 as interpreted by Wilson.
Kathey Amyotte relies on the following cases from other jurisdictions: Graham v. Edwards, 162 Ky. 771, 173 S.W. 127 (1915); In re McMahon Estate, 174 Cal. 423, 163 P. 669 (1917); and In re Brooks’ Estate, 214 *735 Cal. 138, 4 P.2d 148 (1931). These decisions recognize that holographic wills are generally required to be subscribed at the end or the close of such a writing, but there are circumstances, such as when it is clear that the signature in question was intended to be the executing signature, or when the signature was sufficiently near the concluding words of the writing as to show a reasonable inference that the testator intended the writing as a completed will, that the general rule should have some flexibility-
Kathey Amyotte also seeks to distinguish the situation at bar from Wilson on its facts. She claims that Mildred Rowell’s last paragraph is a definitive closing, and there need be no worry that Mildred did not dispose of all the property she intended to. On the other hand, Mildred did not dispose of all her personal property. She still had two cars, though one was junked and the other was of questionable value, and approximately $100.00 in a checking account. Clara Thompson in Wilson had failed to dispose in her will of three diamonds and $6,000.00 kept in bank accounts. Clara Thompson failed to name an executor in her will, and so did Mildred Rowell.
This jurisdiction has adopted a bright-line rule in the matter of subscription of holographic wills. The rule makes for easy and sure application, but mechanical applications sometimes lead to unfair or unjust results. We find that the interpretation of Miss.Code Ann. § 91-5-1 as provided in Wilson v. Polite and In re Estate of Giles is still the law in this state. The will was not signed at the end, or “subscribed,” according to the requirements of the statute. This lower court was correct in dismissing Kathey Amyotte’s claim, and its judgment is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.

. Cassidy was twelve years of age at the time of the hearing at bar.